FILED
1/29/13 2:24 pm
CLERK
U.S. BANKRUPTCY
COURT - ERIE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

IN RE:

| | | |
|---|---|---|
| ROBERT S. NAGY and | : | Case No. 10-10404-TPA |
| LEAH J. THERASSE, | : | Chapter 11 |
| Debtors | : | |
| | : | Related to Doc. No. 263 |

Appearances:  Gary V. Skiba, Esq., Counsel for the Debtors
Matthew F. Marshall, Esq., Counsel for AgChoice Farm Credit, ACA
Beverly Weiss Manne, Esq., Counsel for PNC Bank, N.A.


### MEMORANDUM OPINION


Presently before the Court is the Debtors' oral motion to approve their **Fourth Amended Plan of Reorganization** ("Plan") by way of a cramdown under *11 U.S.C. §1129(b)(1)*. For the reasons set forth below, that motion will be denied, but with leave for the Debtors to file a further amended plan to address the issues that prevent confirmation at this time.[1]


### *PROCEDURAL BACKGROUND*


The Chapter 11 Debtors in this case filed the *Plan* on April 17, 2012, together with an accompanying *Fourth Amended Plan Summary* and a *Forth Amended Disclosure Statement* ("Disclosure Statement").  See Doc. Nos. 263, 264, and 267.  The *Disclosure Statement* was approved by an Order dated April 18, 2012, which order also established a schedule for the plan confirmation process.  See Doc. No. 269.

---

[1]    The Court's jurisdiction under *28 U.S.C. §1334* has not been placed in issue.  This is a core proceeding pursuant to *28 U.S.C. §157(b)(2)(A)* and *(L)*.

On May 21, 2012, the only Objection to the *Plan* was filed by creditor AgChoice Farm Credit, ACA ("AgChoice") at Doc. No. 283 ("Objection").  Per its proof of claim, AgChoice is owed $1,106,779.38 by the Debtors.  This debt is secured by a mortgage on 102.95 acres of real estate at 13831 Edinboro Plank Road, Cambridge Springs, Pa. owned by the Debtors, as well as by a security interest in two wind turbines and some farm equipment.  Under the terms of the *Plan*, the Debtors propose to subdivide this real estate into two parcels, one of approximately 62 acres and the other of approximately 40 acres.  The Parties previously stipulated that the value of the real estate as a single parcel is $850,000, and that a subdivision would result in a value of $515,000 for the 62 acre parcel and $400,000 for the 40 acre parcel.  *See, Joint Motion and Request for Scheduling Order* ("Joint Motion"), Doc. No. 208, filed on September 22, 2011.

The *Plan* further provides that the 62 acre parcel and wind turbines would be sold at a public auction within two months of plan confirmation and all of the sale proceeds, less taxes, costs and auction expenses, would be paid to AgChoice against the debt, but that in any case AgChoice will "credit its obligation in the amount of $515,000, the appraised value of the 62.491 acres" toward its claim.  *Plan* p. 10.  As to the 42 acre parcel, the *Plan* provides that it will be retained by the Debtors and $400,000 will be paid to AgChoice over 20 years at 5% interest, resulting in a monthly payment of $2,639.82.

The claim of AgChoice is covered in two separate classes in the *Plan*.  The secured portion of the AgChoice claim is contained in Class 4 and paid as described in the preceding paragraph.  The remaining deficiency, which the *Plan* sets at $191,779.38 less whatever AgChoice receives for the sale of the turbines, is to be paid through Class 6 along with other unsecured creditors.

2

AgChoice raised a number of points in its *Objection*, some of which are merely duplicative. A fair summary of the points raised in the AgChoice *Objection* includes:

- Debtors may only reduce the amount of the AgChoice deficiency claim by the actual net amount of the sale involving the 62 acre parcel and the turbines (Objections at ¶¶12, 16)

- Debtors may not reclassify or bifurcate AgChoice's claim in the Plan (Objection at ¶13)

- The Plan violates *11 U.S.C. §1129(a)(8)(A)* because AgChoice has not accepted it. (Objection at ¶14)

- The Plan violates *11 U.S.C. §1129(b)* because it is not fair, equitable and reasonable with respect to the AgChoice secured claim and it discriminates unfairly against AgChoice. (Objection at §16).

- The Plan does not show by concrete evidence that there will be sufficient cash flow to fund it. (Objection at ¶17)

- The Plan violates 11 U.S.C. *§1129(a)(11)* because if it were confirmed it is likely to be followed by liquidation or the need for further reorganization. (Objection at ¶18)

The Debtors filed a *Summary of Ballots* for the *Plan* on May 24, 2012. See Doc. No. 284. This *Summary* indicated that AgChoice had, in fact, voted to reject the *Plan* and all other voting creditors had voted to accept. Thus, of the impaired classes under the *Plan*, two were in favor of acceptance (Classes 2 and 5) and one was opposed to acceptance (Class 4). The final impaired class, the Class 6 unsecured creditors, was shown as an acceptance because 3 votes totaling $52,199.74 in claims voted to accept while 1 vote (clearly AgChoice) had voted to reject but its claim was unliquidated. The Debtors thus showed Class 6 as being 75% in favor by number of votes

3

and 100% in favor by monetary amount.[2]

A plan confirmation hearing was held on May 31, 2012.  The chief point of dispute between the Debtors and AgChoice at this hearing was whether the amount to be credited toward the AgChoice debt and related to the sale of the 62 acre parcel should be the $515,000 figure which the Parties had stipulated to in the *Joint Motion*, or, whether it should be the actual sale figure reached at the proposed public auction.  Debtors' Counsel also stated at this hearing that AgChoice was free to credit bid at the auction to protect its interests.  Acknowledging that not all impaired classes had voted to accept the *Plan*, the Debtors made an oral motion for  cramdown pursuant to *11 U.S.C. §1129(b)(1)*.  The Court indicated that it would take the issue raised about the proper amount of credit for the public sale under advisement and issue an order concerning the request for a cramdown.  On June 1, 2012, the Court issued an Order scheduling a cramdown hearing for July 25, 2012.  See Doc. No. 294.  In this same Order, the Court directed that any Party objecting to a cramdown was to file a brief setting forth in detail the reasons for the objection, along with supporting case law, while the Debtors were subsequently to file a brief in support of their position.

The only brief objecting to cramdown was filed by AgChoice.  See Doc. No. 308.  In addition to mentioning the points raised in its Objection (while providing little if any elaboration of them), AgChoice raised a new issue in its brief, contending that the proposed sale of the 62 acre parcel free and clear of all liens is subject to *11 U.S.C. §363(f)*, which allows for a free and clear sale

---

[2]         Given the strong likelihood that the AgChoice Class 6 claim will ultimately be at least equal to the total amount of the 3 votes to accept in this class, it is questionable whether this class should be found to have voted in favor of the *Plan* under  the 2/3 in amount requirement of *11 U.S.C. §1126(c)*.  Regardless, it is clear that even deeming Class 6 to have voted in favor of the *Plan*, not all impaired classes have voted in favor.

in only five specific circumstances.  AgChoice claimed that only two of those circumstances could possibly apply in this case, i.e., *Sections 363(f)(3)* and *363(f)(5)*, but then argued that under the facts of the case, neither applied.

The brief filed by the Debtors in response argued that AgChoice should be bound by the $515,000 value figure for the 62 acre parcel on the basis of "judicial estoppel" or "equitable estoppel."  It also argued that no Section 506 action was required to set such value under the circumstances, but that if AgChoice "insists" upon a formal hearing under *Section 506* that can be done after the sale occurs.  Finally, the Debtors' brief asserts that the proposed sale can qualify pursuant to either *Section 363(f)(3)* or *363(f)(5)*.

On July 25, 2012, a cramdown hearing was conducted.  The only party other than the debtors and AgChoice represented at the hearing was PNC Bank, a secured creditor in Class 2 that supports the *Plan*.  The attorneys for the Debtors and AgChoice were permitted to argue their positions, and the Debtors presented the testimony of accountant Trish Shoulders who provided a description of the financial condition of the Debtors pre- and post-bankruptcy. The Court indicated it would take the matter under advisement.

On August 22, 2012, the Court issued an Order at Doc. No. 319 which summarized the status of matters as follows:

> Although AgChoice raised all the issues identified *supra*, the primary focus of the Parties' Briefs and their argument at the cramdown hearing centered on three issues: feasibility; the application of *11 U.S.C. 363(f)(3)* or *(f)(5)*; and, whether the Parties agreed upon valuation of the parcel of real property at issue is determinative of a portion of AgChoice's claim with respect to that parcel.

*id.* at 2.

With respect to the first of these issues, the Court made a finding, based on the credible testimony of Trish Shoulders, that the *Plan* is feasible.  With respect to the second issue, the Court noted that the Parties had thoroughly briefed it, leaving it in a posture for the Court to make a decision.  Finally, with respect to the third issue, the Court set forth the pertinent facts and noted that after hearing argument and giving a fresh review to the *Joint Motion* in light of those arguments, it was "hard pressed" to view the *Joint Motion* as anything other than a resolution of the valuation issues of the parcels.  In other words, the Court indicated it was strongly considering the AgChoice view, which would mean any AgChoice deficiency claim would be set based on the actual sale amount of the 62 acre parcel, not the $515,000 figure.  The Court went on to state, however, that it had not made a final decision as to that issue and directed the Parties to file further briefs on that discrete issue.  Those briefs have now been filed and all matters are ripe for decision.

### *LEGAL DISCUSSION*

#### *Standard for Cramdown*

To be confirmed, a plan under Chapter 11 must meet all of the requirements of 11 *U.S.C. 1129(a)*, which includes a requirement that each impaired class under the plan has accepted it.  *See Section 1129(a)(8)*.  The Debtors concede that they cannot meet the requirement because of AgChoice's vote to reject the *Plan*.  They have thus asked the Court to confirm the *Plan* pursuant to the *Section 1129(b)(1)* "cramdown" provision.  Under that provision, if a plan meets all of the applicable requirements of *Section 1129(a)* except for the impaired class voting standard of *Section 1129(a)(8)*, the plan may nevertheless be confirmed if it "does not discriminate unfairly, and is fair

6

and equitable, with respect to each class of claims or interests that is impaired under, and has not

accepted, the plan." *Section 1129(b)(2)* goes on to explain what this means, providing:

> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>
>> (A) With respect to a class of secured claims, the plan provides—
>>
>>> (i) (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>>>
>>> (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
>>>
>>> (ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
>>>
>>> (iii) for the realization by such holders of the indubitable equivalent of such claims.

*11 U.S.C. §1129(b)(2)*. The proponent of a cramdown plan bears the burden of establishing the

plan's compliance with each of the requirements set forth in *Section 1129(a)* (except *Section*

*1129(a)(8))*, while the objecting party bears the burden of producing evidence to support its

objections. *In re All Land Invs., LLC*, 468 B.R. 676, 688 (Bankr. D. Del. 2012).

*Requirements of Section 1129(a)*

As the quotation previously reproduced from the August 22, 2012 Order indicates, the only aspect of the *Section 1129(a)* requirements (again, leaving aside the voting requirement of 1129(a)(8)) drawn into issue by AgChoice is whether the plan is feasible, i.e., whether:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

*11 U.S.C. §1129(a)(11).* This feasability requirement does not mean the plan's success is guaranteed, only that it provides a realistic and workable framework. *See In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012). Put another way, the plan must be reasonably likely to succeed on its own terms without a need for further reorganization of the debtor. *Id.*

The Court has previously found that the Debtors have met their burden of proving feasability through the testimony of their accountant which the Court found to be competent and credible. Furthermore, the Court's own review of the Monthly Operating Reports filed by the Debtors during the course of the case supports a conclusion of feasability. While AgChoice raised feasability as an issue in an abstract way, it provided no evidence to counter the evidence supporting a finding that the *Plan* is feasible to the required level. The Court therefore holds that the *Plan* meets the requirement of *Section 1129(a)(11)*.

AgChoice itself did not call into question whether the *Plan* failed under any other of the applicable *Section 1129(a)* requirements, and thus perhaps may be viewed as having waived

them.  Nevertheless, for the sake of completeness and consistent with its obligation, the Court has

reviewed them.  With one possible exception, the Court finds that all such requirements are met.

The possible exception referred to is *Section 1129(a)(1)*, which in broadly written

terms, requires that a plan must comply with "the applicable provisions of this title."  Given the wide

scope of this provision, it may well encompass the issue involving the effect of the Parties'

stipulation of a $515,000 value for the 62 acre parcel.  The Court discusses that issue, infra, and will

thus refrain for the time being from reaching any conclusion as to whether the *Plan* meets the

requirements of *Section 1129(a)(1)*.  Aside from that caveat, however, the Court finds that all other

applicable requirements of *Section 1129(a)* are met.

*The Applicability of Section 363(f)(3) or 363(f)(5)*

*Section 363(f)* provides:

(f) The trustee may sell property under subsection (b) or (c) of this section
free and clear of any interest in such property of an entity other than the
estate, only if–

(1) applicable nonbankruptcy law permits sale of such property free
and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to
be sold is greater than the aggregate value of all liens on such
property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable
proceeding, to accept a money satisfaction of such interest.

9

11 U.S.C. §363(f).  The Debtors and AgChoice are in agreement that the only parts of this provision

that could possibly allow the proposed free and clear sale of the 62 acre parcel are *363(f)(3)* and

*363(f)(5)*, but they sharply differ on whether either of those sections actually do allow the sale under

the facts of the case.

As to *Section 363(f)(3)*, the nub of the dispute is over the meaning of the phrase

"aggregate value of all liens."  The Debtors contend that the phrase means the amount by which the

lienholder's claim is actually secured, as determined pursuant to *11 U.S.C §506(a)*.  They point to

a series of cases that support this position, exemplified by *In re Boston Generating, LLC*, 440 B.R.

302 (Bankr. S.D. N.Y. 2010).  AgChoice argues that the phrase means the actual face amount of the

liens, and it cites a series of cases for that view, headed by *In re PW, LLC (Clear Channel Outdoor,

Inc.*), 391 B.R. 25 (9th Cir. BAP 2008).  Both Parties agree that there is no binding precedent on this

issue and each side urges the Court to go along with  the line of cases that supports its position.

As to *Section 363(f)(5)*, the Parties reach opposite conclusions as to whether it can

apply here.   The Debtors assert that the possibility of a cramdown itself, along with other

unspecified legal or equitable proceedings recognized under Pennsylvania law, furnish the necessary

basis to satisfy *Section 363(f)(5)*.  AgChoice argues that using the possibility of a cramdown to

support the application of *Section 363(f)(5)* amounts to nothing more than circular reasoning.  It

rightly criticizes the Debtors for merely stating that there are other possible legal and equitable

proceedings which could compel AgChoice to accept a monetary satisfaction of its claim as well,

without identifying them.

The Court has reviewed the law cited by the Parties and it is clear that the points raised about *Section 363(f)(3)* and *(5)* are important and complex.  However, before engaging in an extended analysis and adopting a position on them, the Court must step back and ask itself a more fundamental question – does *Section 363(f)* even apply in the circumstances of this case?  As indicated above, AgChoice first interjected the issue of *Section 363(f)* into the case in its July 2, 2012 brief.  When the Debtors responded in their July 16, 2012 brief they also addressed the issue on the merits and by that action implicitly agreed with AgChoice that the proposed sale of the 62 acre parcel must qualify under one of the parts of *Section 363(f)*.  Given this consensus view of the Parties, the Court itself had no reason to question the applicability of *Section 363(f)* until the further reflection that accompanied the drafting of this Opinion.

Upon such further reflection, the Court concludes that *Section 363(f)* does not apply and the Debtors therefore do not have to demonstrate that the proposed sale of the 62 acre parcel would meet one of the *363(f)* subsections.  The reason for this conclusion is that the proposed sale would be conducted pursuant to a confirmed plan, not pursuant to *Section 363*.  The distinction is critical because a "free and clear" sale effected through a confirmed plan is only required to comply with the credit bidding requirement of *Section 363(k)* and to have the creditor's lien attach to the sale proceeds in order to meet the fair and equitable test for a cramdown under *Section 1129(b)(1)*.  *See, 11 U.S.C. §1129(b)(2)(A)(ii)*, quoted above.

The Court's conclusion in this regard is derived from a plain reading of the statute, which contains no reference to *Section 363(f)* within *Section 1129(b)(2)(A)*.  For instance, as one court observed:

11

> Furthermore, it is undisputed that collateralized property can be sold for less
> than the amount of the lien at confirmation by cramming down a secured
> creditor. Section 1129(b)(2)(A)(ii) so provides without any references to the
> protections of § 363(f), so long as the lien attaches to the proceeds or the
> secured creditor can bid in its lien pursuant to § 363(k).

*In re Beker Indus. Corp.*, 63 B.R. 474, 477 (Bankr.S.D.N.Y. 1986). In a subsequent case the court

rejected a more creative attempt to somehow import the requirements of *Section 363(f)* into a

cramdown proceeding, stating:

> Section 1129(a)(1) requires a plan to comply with other applicable
> provisions of the Bankruptcy Code. The Bank argues that this requirement
> is not satisfied in that the plan does not comply with Section 363(f) of the
> Code. Section 363(f) provides the conditions under which property may be
> sold outside the ordinary course of business free and clear of liens in a
> Bankruptcy proceeding. 11 U.S.C. § 363(f). The protections of § 363(f) do
> not apply, however, in a cram down pursuant to § 129(b). In re Beker
> Industries Corp., 63 B.R. 474, 477 (Bankr.S.D.N.Y.1986). A cram down
> allows collateralized property to be sold for less than the amount of the
> entire lien. Id. A sale of the debtor's property is permitted under Section
> 1129(b)(2)(A)(ii) if the lien of a secured creditor attaches to the proceeds
> of the sale to the extent of the allowed amount of the claim or if the secured
> creditor realizes the indubitable equivalent of its claim. *11 U.S.C.*
> *§1129(b)(2)(A)(ii)*. Because the protections of § 363(f) do not apply here,
> there was no need for the bankruptcy judge to address them.

*In re TMA Assocs., Ltd.,* 160 B.R. 172, 177 (D.Colo. 1993). *See also, e.g., In re Golf, L.L.C.,* 322

B.R. 874, (Bankr. D.Neb.2004) (*Section 363(f)* does not apply to post-confirmation sales).

This Court's conclusion is further bolstered by the recent Supreme Court decision

in *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, ____ U.S. ____, 132 S.Ct. 2065 (2012); in

which the court held that a cramdown plan contemplating a free and clear sale of encumbered assets

had to meet the requirements of *Section 1129(b)(2)(A)(ii)* (meaning it had to allow for credit

bidding), and could not be confirmed on an indubitable equivalence theory under *Section*

12

*1129(b)(2)(A)(iii)*.  The court stated:

> A Chapter 11 plan confirmed over the objection of a "class of secured claims" must meet one of three requirements in order to be deemed "fair and equitable" with respect to the nonconsenting creditor's claim .... Under [*11 U.S.C. §1129(b)(2)(A)*] clause (i), the secured creditor retains its lien on the property and receives deferred cash payments. Under clause (ii), the property is sold free and clear of the lien, "subject to section 363(k)," and the creditor receives a lien on the proceeds of the sale. Section 363(k), in turn, provides that "unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property"— *i.e.,* the creditor may credit-bid at the sale, up to the amount of its claim. Finally, under clause (iii), the plan provides the secured creditor with the "indubitable equivalent" of its claim.

132 S.Ct. at 2069-70.  It is significant to this Court that in the course of a lengthy discussion on the requirements that must be met for approval of a free and clear sale in a cramdown plan, the *RadLAX* court said not one word about the applicability of *Section 363(f)*.

Finally, the most widely-respected treatise on bankruptcy law reaches the same conclusion:

> The sale free and clear under a plan is more powerful than a regular sale free and clear under section 363(f). Under that subsection, a sale free and clear can occur under only one of five conditions. In particular, if the property to be sold is encumbered by liens in excess of its value, most cases under section 363(f)(3) will not permit a sale free and clear.  Under section 1129(b)(2)(A)(ii), however, there is no such limitation. The Code makes this distinction because the secured creditor receives the benefits of the other confirmation requirements with the sale, and thus will be better protected.

7 *Collier on Bankruptcy* ¶1129.04[2][b][iv] (16th Ed. 2012) (footnotes omitted).

The Court therefore finds that the 62 acre parcel sale provided for in the Debtors' *Plan* does not need to meet the requirements of *Section 363(f)*, only the requirements of *Section*

*1129(b)(2)(A)(ii)*.  In that regard, the Debtors have repeatedly indicated both verbally and in writing

that AgChoice will have the right to credit bid at the sale, something the Court will also require in

its Order.  The *Plan* also provides that AgChoice is to receive all of the proceeds of the sale, after

deducting the costs of sale, which the Court views as equivalent to the AgChoice lien attaching to

the sale proceeds, and which in any event can be explicitly provided for in the Amended Plan to

remove any doubt.  The *Plan* thus meets the fair and equitable standard of *Section 1129(b)(1)*.[3]

*The Effect of the $515,000 Stipulation as to*
*the Value of the 62 Acre Parcel*

The final issue to be resolved is the effect of the Parties' stipulation that the 62 acre

parcel has a value of $515,000.  As was indicated above, in its August 22, 2012 Order, for reasons

that need not be repeated here, the Court already indicated that it was strongly leaning toward the

AgChoice position on this issue.  Nothing submitted or said by the Debtors since then has changed

that view.

The Court's understanding was that the primary, if not exclusive, purpose for the

appraisals that valued the Debtors' property both as is, and based on the proposed subdivision into

two parcels, was simply to show that the proposed subdivision would not harm AgChoice's

mortgage interest in the property.  This became an issue because AgChoice had argued that the

Debtors had no right to subdivide the property over the objection of AgChoice.  Since the appraisal

---

[3]    *Section 1129(b)(1)* also includes a requirement that the plan not discriminate unfairly.  Although
AgChoice raised unfair discrimination as an issue in a rote manner in its Objections to the *Plan,* it never pressed the issue
beyond that.  The Court also finds that the *Plan* does not unfairly discriminate.

showed that the total value of two parcels after the subdivision would exceed the value of the single undivided parcel, it showed that AgChoice would not be harmed.

This lack of harm was a key element in the Court's decision to authorize a subdivision as part of a plan.  By agreeing to stipulate to the values as set forth in the appraisal, AgChoice was merely agreeing that the proposed subdivision would not harm its overall interest, or, put another way, was perhaps thereby abandoning any further effort to contest the Debtors' ability to create the subdivision.  The Court agrees that it is possible the Debtors may have in good faith  believed that by stipulating to the $515,000 figure AgChoice was also agreeing to that figure for claim allocation purposes.  However, that would be a significant step for AgChoice to take, and given the absence of any explicit language to that effect in the Joint Motion,  the Court is unwilling to agree with the Debtors and accept their interpretation in that regard.

Based on that conclusion, the *Plan* as currently written cannot be confirmed since it would require a "credit" of $515,000 to be applied against the debt to AgChoice, regardless of the actual sale price.  The Court views this as a failure to comply with the requirements of *Section 1129(a)(1)*.  The *Plan* and the request for cramdown must be denied for that reason,  but the Debtors will be given a final opportunity to file another amended plan to address this problem.   An appropriate Order follows.

Dated: January 29, 2013

Thomas P. Agresti, Chief Judge
United States Bankruptcy Court

Case administrator to serve:
    Debtors
    Gary V. Skiba, Esq.
    Matthew F. Marshall, Esq.
    Beverly Weiss Manne, Esq.